Arnold M. KRAVETZ, as Trustee in Bankruptcy of M. F. C. Card, Inc., Plaintiff-Appellee,

v.

JOANGE BUILDING CORP., Defendant-Appellant.

No. 308, Docket 29274.

United States Court of Appeals Second Circuit.

Argued Jan. 21, 1965.

Decided Feb. 16, 1965.

Robert P. Herzog, New York City, for plaintiff-appellee.

Dreyer & Traub, Brooklyn, N. Y. (Samuel Kirschenbaum, Brooklyn, N. Y., of counsel), for defendant-appellant.

Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.

MOORE, Circuit Judge.

Arnold Kravetz, a trustee-in-bankruptcy for M. F. C. Card, Inc., sued Joange Building Corp. to set aside as preferential a transfer of the bankrupt's business assets to Joange at an execution sale made to enforce a default judgment for Joange against the bankrupt. Neither party made demand for a jury trial within the appropriate time, Fed.R.Civ.P. 38(b), and plaintiff moved for summary judgment. Judge Dooling granted summary judgment for the trustee, and Joange appeals.

Joange leased premises to the bankrupt for use in bankrupt's business. In November 1959 it also made an unsecured loan of $5,000 to the bankrupt, evidenced by a series of promissory notes payable quarterly until December 1961, to enable bankrupt to buy fixtures and inventory. Bankrupt was soon in default on nearly all notes due, some of which were dishonored on presentation. Rent had not been paid for several months prior to the execution sale. Bankrupt intended to discontinue the business and had surrendered the keys to Joange, apparently intending also to leave all the fixtures on the premises. All this Joange knew before the execution sale. In December 1962 bankrupt suffered a default judgment for $4,328.30 in Joange's favor on the loan. At an execution sale in January 1963, all of bankrupt's physical assets, stock-in-trade and fixtures went for $4,175.00 ($4,300.25 including tax) to Joange as the highest bidder at a public sale. On that day, bankrupt was insolvent.

In his affidavit opposing summary judgment, Berfond, an officer of Joange, professed only ignorance of bankrupt's insolvency and absence of reasonable cause to believe it. Although bankrupt's President, Max Fraiden, stated that he had told Berfond that he was "having a difficult time" meeting his obligations to all his creditors, Berfond claimed that he "had no idea" and "did not know" whether bankrupt had any business creditors or whether they were being paid. We would be surprised

if any creditor-landlord of a small greeting-card store, whose notes and rent were in default, would not suspect that his debtor-tenant had some unpaid suppliers. Moreover, the test is not the subjective one of what Berfond believed but the objective one of what he had reasonable cause to believe.

> Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent. 3 Collier, Bankruptcy ¶ 60.53(1), at 1057–58 (Moore & Oglebay 14th ed. 1964) (Footnotes omitted.)

> Where the trustee alleges that the defendant had reasonable cause to believe that the debtor was insolvent, an averment by the defendant that he had no personal knowledge of the debtor's insolvency is insufficient. Id. at ¶ 60.61(1), at 1119.

■ The facts undisputedly known by Joange as of the date of the execution sale (January 3, 1963) more than meet the requirements of reasonable belief. As the facts related above demonstrate, this is not a case where the transferee merely knew that the bankrupt had failed to pay a debt when due, which, although a relevant fact, see Roth v. Fabrikant Bros., Inc., 175 F.2d 665, 669 (2d Cir. 1949), is not enough standing alone, cf. Bostian v. Levich, 134 F.2d 284, 286 (8th Cir. 1943). Here it was not standing alone, there was the quitting of the business and the intention to leave the stock-in-trade and fixtures; nor has defendant suggested that a trial would develop new or different facts. The only question would concern the proper inferences to draw. Given all the facts indisputably known to Joange, the inference that a prudent man would have believed that the debtor was unable to meet its obligations as they arose was so compelling that the judge could properly draw it without the need of a trial.

■ A further question is raised as to the value of the property transferred, which determines the amount which the trustee's judgment may recover. The trustee sued for $10,000. The schedule of bankrupt's assets listed only stock-in-trade and fixtures, which were valued at $9,200. It was Fraiden's opinion that the value of the inventory alone, excluding fixtures, was about $5,000. However, Judge Dooling found that Joange's "bid at the auction sale of $4,300.25 establishes the value of the property in the absence of credible evidence of a different value." The problem, Joange claims, is that the bid was not in any way acceptable as "some proof of value" because both the trustee and Joange agreed that "the bid * * * was artificial and in no way related to the actual value of the assets remaining * * *." Although "the price realized on a forced sale may not always be the measure of a 'fair valuation' * * *," Adler v. Greenfield, 83 F.2d 955 (2d Cir. 1936), in some circumstances it may be used. Here, as in Adler, there was a public sale. And, although Joange now baldly asserts in its brief that it bid an amount "far in excess of the value of the assets," here also, as in Adler, nothing in the record suggests that the value of the assets was appreciably less than the amount bid. Indeed, the only other evidence—Fraiden's testimony and the schedule of assets—points in the other direction, indicating that only the trustee could gain on a further inquiry into the value of the property. It was the trustee who, seeking $10,000, first said that the $4,300 bid was not related to value—unquestionably because the bid was thought to be too low. However, the trustee is now satisfied with his judgment. Judge Dooling's conclusion that the bid adequately established value might be less convincing if the bid was "in no way related to the actual value," or that it significantly

exceeded the value. But there was no proof of any such disparity. The judgment has been attacked by the transferee, not by the trustee. No reason has been given for the assumption that reliance on the bid to establish value led to an unreasonably high figure. Nor can it be assumed that the bid would exceed the value of the property. If the value was lower, Joange had ample opportunity to demonstrate the disparity.

Affirmed.